Debra Denise GREGG, Anthony
Lewis Gregg, Plaintiffs,

v.

HAY–ADAMS HOTEL, Defendant.

Civil Action No. 95–00218 (RCL).

United States District Court,
District of Columbia.

Sept. 12, 1996.

H. Vincent McKnight, Jr., Christopher V. Tisi, of Ashcraft & Gerel, Washington, DC, for Plaintiffs.

Joseph R. Damato, Elizabeth L. Lewis and Beth C. Wolffe of Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, Robert P. Watkins, Jonathan P. Bach, of Williams & Connolly, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on defendant Hay–Adams Hotel's Motion for Summary Judgment. Plaintiff Debra Denise Gregg has filed a sexual harassment suit for violations of Title VII, (42 U.S.C. Section 2000e et seq.), 42 U.S.C. Section 1981, and the District of Columbia Human Rights Act, (D.C.Code Section 1–2501 *et seq.*), and seeks $1,000,000 in compensatory damages. She also seeks $1,000,000 for damages resulting from emotional distress and $1,000,000 in punitive damages. Plaintiff Anthony Gregg also brings a claim for damages resulting from loss of companionship and consortium in the amount of $1,000,000. For the reasons set forth below, the court will grant defendant's motion on all counts of Debra Gregg's complaint. With respect to Anthony Gregg's claim for loss of consortium, defendant's motion does not appear to have been contested, and this count may be dismissed either as conceded, or alternatively, as based on the merits.

## BACKGROUND

Plaintiff Debra Denise Gregg is currently employed as an Assistant Pastry Chef in the Hay–Adams Hotel in Washington, D.C. She was hired as such in June of 1993 and has remained in this position since that time. She alleges that within a few months of her hiring, the Executive Chef of the Hotel, Patrick Clark, began to make suggestive remarks toward her, culminating in unwelcome physical contact. Though there is some dispute as to whether this contact was, in fact, unwelcome, for the purposes of this decision, it will be assumed that Clark's actions were unwanted by the plaintiff.

On April 14, 1994, some eight months after the harassment allegedly began, Gregg complained about Clark to Payroll/Personnel Assistant Tonya Roberts. Independently, another co-worker, Victoria Dade, also complained about Clark to Roberts that very day. There had never been a sexual harassment complaint by any hotel employee prior to this date.

Still on April 14, 1994, Roberts reported the complaints to Human Resources Director Jeffrey Lea, who instructed Roberts to prepare a memorandum regarding the charges—which she delivered to him the next day. In the memo, Roberts reported, among other things, that she told Gregg she would assist her and urged Gregg to take down notes concerning the events.

On Friday morning, April 15, 1994, Lea met with Urs Aeby, the General Manager of the hotel—who then ordered an immediate investigation of the complaints. Aeby then met with each of the two women to inform them that all appropriate steps would be taken to provide them a harassment-free workplace, and he further assured them that they would not be subject to retribution. Statements were taken from Gregg, Dade, and several other employees who might have knowledge of the events. Clark was told generally about the allegations but not about who had made them.

On April 26, 1994, less than two weeks after the complaints, Aeby issued Clark a "formal and final written warning." The letter stated that the investigation revealed behavior "verg[ing] on harassment" and that even with respect to an unsubstantiated allegation, Clark had "shown a serious lack of judgment." The letter further warned him that any retributive acts could be punishable by termination of employment.

There have been no subsequent sexual harassment accusations since the April 14, 1994 charges. Gregg has alleged, however, that on three separate occasions Hay–Adams supervisory employees have engaged in retaliatory actions as a result of her complaint.

The first charge of retaliation develops from a written warning issued to Gregg on June 2, 1994 by Lea as a result of Gregg's failure to follow proper call-in procedures when she failed to report to work on two consecutive days. Judy Schmitt, Pastry Chef and Gregg's immediate supervisor, urged the action.

The second charge of retaliation stems from a written warning on October 25, 1994, which Graciela Lewis, who replaced Lea as Director of Human Resources, issued to Gregg for insubordination. Lewis was independently told by both Clark and Schmitt that Gregg had been making racial jokes, largely directed at Gregg's co-worker Dade. Lewis met with Gregg on October 14, 1994, and warned her not to confront Dade or to make racial comments in the workplace. When Donnie Sharlein, the Executive Sous Chef, perceived Gregg making another racial comment to Dade, he reported it to Lewis, who considered this a violation of a direct order. Lewis then wrote Gregg up for insubordination.

The final act of alleged retaliation results from another written warning issued to Gregg on April 24, 1995 for her failing to properly prepare desserts at a function for Vice President Albert Gore, Jr. By then, Clark was no longer employed at the Hay–Adams Hotel, and it was the new Acting Executive Chef, Martin Saylor, who reported Gregg to Lewis. Lewis then gave Gregg a "final warning." Gregg alleges that these three warnings constitute prohibited retaliation by Hay–Adams Hotel supervisors, the direct result of her complaints against Clark and the lawsuit filed against the Hotel.

Anthony Gregg, who married Debra in October of 1993, also claims loss of companionship and consortium as a result of the sexual harassment she endured on the job.

## DISCUSSION

A party may move for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress &*

Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This court, upon examination of all the documents in this matter, concludes that there are no genuine issues of material fact in dispute and that defendant is entitled to summary judgment on all counts.

### A. *The Title VII Claim*

The thrust of Gregg's sexual harassment complaint is that persistent comments and suggestions of a sexual nature by Gregg's supervisor, Executive Chef Patrick Clark, created a hostile work environment, in violation of Title VII, and that the Hotel management allowed this behavior. Compl. 2.

Even assuming Clark's behavior amounted to the creation of a hostile working environment—though this is, indeed, disputed—plaintiff Gregg must also show that the employer or "any agent" of the employer is responsible for the creation of the hostility. 42 U.S.C. Sec. 2000e(b) (1988). *See also, Gary v. Long,* 59 F.3d 1391 (D.C.Cir.1995). In *Meritor v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408–09, 91 L.Ed.2d 49 (1986), the Supreme Court rejected the notion of an employer's strict liability for sexual harassment, and this Circuit has applied common law agency principles to determine whether an employer may be held liable under Title VII for sexual harassment by its employees. *Gary,* 59 F.3d at 1395.

Gregg attempts to place liability on the employer by arguing that the Hotel "violated its expressed company policy regarding sexual harassment to refrain from sexually discriminating against [p]laintiff by allowing its agents and employees to make sexual advances towards plaintiff and by creating an intimidating hostile and offensive working environment...." Compl. 3.

■ Focusing on agency principles, a plaintiff may, in order to extend liability to the employer, establish that a harasser was acting within the scope of his employment when he engaged in the harassing actions, or if not, that he was at least acting with apparent authority to create a hostile work environment. *See Gary,* 59 F.3d at 1397–98 (relying on Restatement (Second) of Agency § 219(2)(a-d)). Gregg neither alleges, nor has evidence to suggest, that the employer actually knew or had reason to know of the harassment, nor that the Hotel approved of it. Gregg is thus forced to establish the Hotel's liability under an apparent authority theory—that it would be reasonable for an employee to believe Clark was acting with the Hotel's authority.

■ An employer may defeat its liability under such a charge, however, if it can show that an employee knew or should have known the employer did not tolerate such conduct. *Gary,* 59 F.3d at 1398.[1] To establish the standard such a policy must maintain before apparent authority will be defeated, Gregg relies on a statement made in *Gary* where the United States Court of Appeals for the District of Columbia Circuit held that when an employer takes "energetic measures to discourage sexual harassment in the workplace and has established, advertised, and enforced effective procedures to deal with it when it does occur, it must be absolved of Title VII liability under a hostile work environment theory of sexual harassment." *Id.* Gregg forcefully asserts this *Gary* principle in the negative—because Hay–Adams's sexual harassment policies did not rise to the level stated in *Gary,* an issue for trial is created to determine whether the Hotel's policies were effective or ineffective as to creating apparent authority for the harassment.[2] What Gregg ignores, however, is that *Gary* itself states, "[w]e do not suggest that an employer must be found liable if it has failed to adopt such measures." *Id.*

---

**1.** "[A]n employer may not be held liable for a supervisor's hostile work environment harassment if the employer is able to establish that it had adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she could report it to the employer without fear of adverse consequences." *Id.*

**2.** Gregg asserts that the Hay–Adams policies "leave room for reasonable doubt about employee knowledge of the policy," and ask for a denial of summary judgment on this ground. Pl.'s Opp'n to Def.'s Mot. for Summ.J. 4.

■ The language plaintiff draws from *Gary* speaks only to the issue of *ex ante* notice to the employee for the purpose of determining whether or not the harasser is acting within the scope of his agency—does a reasonable employee know what behavior is tolerated by the employer and what behavior is not. It is true that this issue is a fact based determination, but even the complete lack or failure of such a policy will not automatically create Title VII liability. Rather, courts must also look to an employer's behavior *ex post* to impose Title VII liability.

■ Even if Hay–Adams's sexual harassment policy were not appropriately communicated to its employees, or not "energetic" enough to discourage the sexual harassment before it occurred—and even if this, in fact, resulted in the creation of a harasser's apparent authority[3]—we must nevertheless address the question of whether the defendant may still avoid Title VII liability if it has responded properly to plaintiff's complaints. It may.

■ In *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 184 (6th Cir.1992), the Sixth Circuit held that agency liability is not strict and can be negated if the employer responds adequately and effectively once it has notice of the actions. Similarly, the Fourth Circuit has adopted this approach, holding that an employer is liable for a sexually hostile work environment created by a supervisor or other employee only if the employer knew or should have known of the conduct *and* failed to take prompt and adequate remedial action. *Andrade v. Mayfair Management, Inc.*, 88

F.3d 258, 261 (4th Cir.1996), *citing approvingly, Dennis v. County of Fairfax*, 55 F.3d 151, 155–56 (4th Cir.1995) (finding that timely and adequate corrective measures will bar an employer's vicarious liability); *see also Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 107 (3d Cir.1994) (stating, "under negligence principles, prompt and effective action by the employer will relieve it of liability"); *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 402 (5th Cir.1993) (upholding a grant of summary judgment for defendant in a Title VII suit, finding, "[w]hen a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability.")[4]

In this District as well, this very principle has been applied. In *Ryczek v. Guest Services, Inc.*, 877 F.Supp. 754, 758 (D.D.C. 1995), the court granted summary judgment in a sexual harassment suit after stating that a company's liability for a supervisor's actions depended not only upon foreseeability of those actions by the company and whether the supervisor was acting within the scope of employment, but even if this were established, "whether the company responded adequately and effectively to negate liability." *See also, Hodges v. Washington Tennis Service International, Inc.*, 870 F.Supp. 386, 388 (D.D.C.1994) (requiring plaintiffs in Title VII actions to establish both employer knowledge or negligence with respect to the harassment and a failure to take appropriate and timely steps to correct the problem before imposing liability); *Turner v. Barr*, 811 F.Supp. 1, 2 (D.D.C.1993) (same); *Barrett v. Omaha Na-*

---

3. In *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 185 (6th Cir.1992), the United States Court of Appeals for the Sixth Circuit stated that even though it believed a harasser's actions were within the scope of his employment, the employer's prompt and adequate response relieved it of liability.

4. Even though the alleged harasser, Clark, did have supervisory authority over Gregg, as opposed to being simply another of Gregg's co-workers, remedial action taken by the employer may still cure possible discrimination. *Ryczek*, 877 F.Supp. at 758 n. 2 (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803–804 (6th Cir.1994) (stating that in a hostile working environment claim, "the determination of whether an employer is liable for its *supervisor's* actions

depends" upon whether the acts were 1) foreseeable or within scope of employment and 2) "even if they were, whether the employer responded adequately...." [italics added] *Id.* See also, *Andrade*, 88 F.3d at 261 (declaring, "we have established, through a long line of precedent, that an employer is liable for a sexually hostile work environment created by a *supervisor* or other employee only if the employer knew or should have known ... and failed to take prompt and adequate remedial action" [italics added] (citations omitted). Thus, the fact that Clark may have been a supervisor as opposed to a co-worker does not alter the fact that the Hotel may still escape Title VII liability if it properly remedied Clark's actions.

*tional Bank,* 726 F.2d 424, 427 (8th Cir.1984) (holding that an employer "must simply take 'prompt remedial action reasonably calculated to end the harassment'" *citing Katz v. Dole,* 709 F.2d 251, 256 (4th Cir.1983)).

██ Turning to the issue of whether the hotel actually did respond in an appropriate and timely fashion to Gregg's complaint, the Court finds that defendant did so, and to a degree which would remove it from any Title VII liability.

It is undisputed that the Hotel took the following actions:

1. When Gregg reported her complaints to the Payroll/Personnel Assistant, Tonya Roberts, she immediately carried the news to the Human Resources Director.

2. Gregg (and another woman who complained) was assured that she would be helped.

3. Within a week of the allegations, four interviews, plus statements by complainants were taken to confirm or disaffirm the charges.

4. The General Manager of the Hotel notified Clark of the allegations, and personally assured Gregg that sexual harassment would not be tolerated.

5. Clark was issued a "formal and final warning," placed in his personnel file, on April 26, 1994, less than two weeks after the complaint was made.

6. The warning to Clark stated that further behavior would result in the immediate termination of his employment.

7. Clark was also threatened with termination should he retaliate against those who complained about him.

8. Clark apologized to Gregg.

9. The Hotel re-issued its sexual harassment policy, ran seminars on sexual harassment (with mandatory attendance for all employees), and Gregg was told to report any further harassment or retaliation directly to the Human Resources Director or the General Manager.

10. A new Human Resources Director, Graciela Lewis, made several visits to the kitchen to ensure the working environment was comfortable there.

11. Gregg admits there was no further harassment after April 14, the date of her first and only complaint to the hotel.

These steps are substantial enough both in action and effect to negate Title VII liability.

In *Saxton v. American Tel. & Tel.,* 10 F.3d 526, 535–36 (7th Cir.1993) the Seventh Circuit ruled that Title VII "requires only that the employer take steps reasonably likely to stop the harassment." Whether the employer could have done more, the court stated, was "irrelevant absent evidence that the employer's action was not reasonably likely to prevent the harassment from recurring." *Id.* at 536. In the case at hand, the actions taken by defendant went even further—they *actually ended* the harassment. *See also,* e.g., *Barrett,* 726 F.2d at 426 (finding that it was not erroneous for the district court to conclude that employer's warning to accused harassers that their conduct would not be tolerated and the threat of termination for further harassing behavior was sufficient remedial action by the employer).

The evidence submitted to this Court—through depositions, undisputed issues of fact, and even the assertions by plaintiff—conclusively establishes that the defendant properly and promptly responded to Gregg's complaints. It not only took steps reasonably calculated to stop the unlawful harassment—all that the law requires—but rather stopped the harassment as a matter of fact. This court concludes that the steps taken by Hay–Adams constitute prompt and effective action of the degree necessary, by any extant standard, to negate Title VII liability.

Defendant is thus entitled to summary judgment on Gregg's hostile work environment claims.

**B.** *Retaliation*

Gregg has also alleged that Clark and others in supervisory and management positions have retaliated against her on account of her filing a sexual harassment suit against the hotel. The court finds these allegations unfounded and will enter summary judgment on this charge in favor of the defendant.

■ Gregg points to three adverse actions[5] she experienced after she complained or filed suit as instances of retaliation. To state a prima facie case for retaliation, plaintiff must show that: 1) she engaged in activity protected by Title VII; 2) she suffered an adverse employment action subsequent to her participation; and 3) there exists a causal connection between the adverse employment action and her participation in protected activity. *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995). Even if, for the sake of summary judgment, it is assumed that Gregg was engaging in protected activity and that she suffered adverse employment actions subsequent to the filing of her complaint, plaintiff nevertheless falters with respect to proving causation.[6] In fact, the undisputed evidence of this case, rather than revealing an employee who has been victimized by her employer as a result of her filing a Title VII action, rather reveals an employee who has sought to use her suit as license to defy the reasonable instructions of her employer.

■ To demonstrate causation, the plaintiff must show that the adverse action would not have occurred "but for" her filing a lawsuit. *See Johnson v. University of Wisconsin—Eau Claire*, 70 F.3d 469, 479 (7th Cir.1995) (affirming summary judgment on a retaliation claim under Title VII); *McKenzie v. Illinois Dept. of Trans.*, 92 F.3d 473 (7th Cir.1996) *citing Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 280 (7th Cir.1985). If Gregg establishes a prima facie case, the burden then shifts to the Hotel to show it had a legitimate, non-retaliatory reason for its actions. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465–66 (9th Cir.1994). If the defendant rebuts plaintiff's prima facie case, plaintiff must then show that defendant's explanation for its conduct is pretextual. *Johnson*, 70 F.3d at 479.

Plaintiff Gregg alleges three instances of retaliation, none of which make it past the causation prong of the prima facie test—and even if they did, certainly do not withstand defendant's legitimate reasons for the actions.

■ The first alleged retaliatory act was a written warning Pastry Chef Judy Schmitt issued to Gregg on June 2, 1994 for failing to follow proper call-in procedures. Gregg failed to report to work for two consecutive days, May 29 and May 30, yet did not call into work to state her condition. Though Gregg had not yet filed a lawsuit at that point, she had complained of sexual harassment. Plaintiff does not attempt to deny the charges or offer an explanation of why the warning she received was illegitimate. All Gregg says is that "Patrick Clark, as supervisor for the entire kitchen ... was directly affected by Gregg's absence;" that Clark exercised supervisory authority over Pastry Chef Judy Schmitt who made the complaint against Gregg; that Clark was "able to make" decisions, in concert with the Human Resources Director concerning Schmitt's employment; and that Clark was "in a position to influence Schmitt's actions and through those actions retaliate against Debra Gregg...." [Plaintiff's Opp'n. to Def.'s Mot. for Summ.J. 4–5]. None of this indicates "but for" causation, nor does it indicate why the Hotel's actions were illegitimate or pretextual. In fact, Hay–Adams General Manager Urs Aeby recounted the incident in a letter written on June 3, 1994, stating, "[i]n the event of any offense incurring displinary [sic] action, very favorable consideration should be given to the employee in question under the various circumstances involved." The record is undisputed that Gregg failed to follow proper procedures, and that this was not the first time she had failed to do so. Simply because Clark *could* have theoretically influenced a decision to issue Gregg a warning does not automatically make this claim of retaliation an issue for trial. Gregg has presented no evidence whatsoever of pretext, and this charge of retaliation is therefore dismissed.

---

5. The Court makes no determination as to whether the three written warnings issued to Gregg constitute "adverse employment actions" for purposes of retaliation.

6. "[A] court may grant summary judgment even in a causation inquiry, where it is warranted." *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir.1996).

■ The second charge of retaliation stems from a written warning for insubordination Gregg received on October 25, 1994. The situation arose because Gregg was accused of making racially demeaning remarks to a fellow employee, Victoria Dade, referring to her, among other things, as a "Susan." Clark and Schmitt independently complained to Graciela Lewis, the new Director of Human Resources, telling her that Gregg was upsetting Dade with such remarks. Lewis asked Clark to explain what "Susan" meant, and he informed her that this was a slur for, in Lewis's words, an "afro-american woman who is perceived to be acting as a caucasian woman." Plaintiff's Opp'n to Def.'s Mot. for Summ.J. Exh. 6. Gregg denied that this was the meaning of "Susan" and claims that Clark, by offering such an explanation, influenced Lewis's decision to issue a warning. Given the weight of the evidence presented the court is satisfied that Gregg was, indeed, making racial remarks to her co-workers, and was warned to desist from such behavior irrespective of her sexual harassment complaint. Even if, as plaintiff alleges, Clark's report to Lewis was inappropriate, the insubordination warning was, in the end, not actually issued because of her use of the word "Susan." Rather, as the written warning itself makes clear, Lewis warned Gregg not to make racial statements, call Dade names, or even apologize to her, since it could be construed as confrontational. Yet, the Executive Sous Chef, Donnie Sharlein, witnessed Gregg violate Lewis's instructions. As Lewis wrote, "[y]ou had been given a direct order from me to stop making racial comments in the workplace. The seriousness was explained to you, and you had agreed that you would stop. Although insubordination may be a terminable offense, in the spirit of resolving this issue, this memo constitutes a warning and will be placed in your file. . . ." Def.'s Mot. for Summ.J. Exh. 17. Gregg then refused to sign that she had read and understood what was expected of her. In reality, then, Clark's statement that "Susan" was a racial term had nothing to do with

the warning. Rather, it was Gregg's violation of Lewis's order to keep away from Dade that resulted in the reprimand.[7] After a careful review of the undisputed facts submitted to the court, the court finds that Gregg's sexual harassment complaint was not the "but for" cause of this warning, thus defeating her prima facie case. Even if such a case could be made out, the Hotel's explanation of. the warning is legitimate and has not been shown to be even arguably pretextual.

■ Finally, Gregg received a third written warning on April 25, 1995, for failure to follow specific instructions by Chef Martin Saylor (who had since replaced Clark who was at this point no longer employed by the Hotel) on how to prepare desserts to be served at a function for Vice President Albert Gore, Jr. Plaintiff alleges this criticism was based "on an entirely subjective assessment of dessert quality," and that "a reasonable jury could conclude that this discipline issued by Human Resources Director, Graciela Lewis, was motivated by retaliatory urges on the part of the hotel." Plaintiff's Opp'n. to Def.'s Mot. for Summ.J. 6. A reasonable jury would conclude no such thing. The record of this case indicates that Gregg not only refused specific instructions on how to prepare the desserts, but also that the desserts she prepared were returned untouched by guests, resulting in a time loss to her department. Gregg's mere assertions are nothing more than mere assertions, and there is nothing in the evidence on which to base a claim of retaliation.

Filing a Title VII action is a serious matter. It is meant to shield employees from the discriminatory actions of their employers, not to excuse an employee's poor job performance, impudence, or insubordination. Everyone in a hotel kitchen has a job to do, but when Gregg failed to do hers, she simply pointed to her sexual harassment complaint—and the Hotel backed away from more severe punishments, presumably in

---

7. It should also be noted that Gregg believed it was retaliatory for Clark to have reported any of the incidents in the first place, but should instead have sat Gregg and the complaining co-worker down and personally intervened. Tr. 139–40. It

is obvious to the court that had Clark intervened in a more personal way, Gregg would now likely be complaining that Clark had retaliated against her *by* personally involving himself in a dispute, instead of reporting the situation to a supervisor.

fear of suit. Gregg's case for retaliation is incapable of surviving summary judgment, and summary judgment on this count of her complaint is entered in favor of the defendant.

### C. Intentional Infliction of Emotional Distress and Punitive Damages

▮ Plaintiff did not respond to defendant Hotel's summary judgment motion with respect to her claim of intentional infliction of emotional distress. Nevertheless, to prove a case for intentional infliction of emotional distress in the District of Columbia, plaintiff must show that defendant (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress. *Anyaibe v. Gilbert Security Service Inc.*, 1995 WL 322452 (D.D.C.) at *6, *citing King v. Kidd*, 640 A.2d 656, 667–68 (D.C.1993).

Gregg's allegations of emotional distress have no factual basis. None of the evidence, when taken with the complaint, supports plaintiff's charge even when viewed in a light most favorable to her. Gregg's count of emotional distress is thus dismissed for failure to state a claim.[8]

▮ With respect to Gregg's claim for punitive damages, she alleges that the Hotel's "willful retaliation and outrageous conduct" entitles her to punitive damages. Compl. 4. Plaintiff must establish that the employer acted with "evil motive or malice." *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 372 (D.C.1993). Plaintiff recounts the manner of Chef Clark's behavior toward Gregg, and states that this conduct of a "management level supervisor" is sufficient on which to base punitive damages. Pl.'s Opp'n. to Def.'s Mot. for Summ.J. 8. Even if Clark did sexually harass Gregg in a "depraved" manner, this alone will not create liability for punitive damages. As has been discussed, an employer is not strictly liable for sexually harassing acts of its employees. With respect to availability of punitive dam-

ages sought from a corporate defendant, such as here, it must be shown that the "wrongful act was authorized and ratified by the corporation, not merely perpetrated by an employee." *Shepherd v. American Broadcasting Cos., Inc.*, 862 F.Supp. 486, 500 (D.D.C.1994) (*vacated on other grounds, citing, Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 992 (D.C.App.1980)). There is no evidence that the hotel ratified Clark's behavior, and as previously discussed, the Hotel took numerous steps to remedy those alleged acts. Plaintiff's requests for punitive damages are denied, and summary judgment is granted to defendant.

### D. Loss of Consortium

▮ The final count of Gregg's complaint is by Debra Gregg's husband, Anthony Gregg, for loss of consortium. Plaintiffs do not respond to defendant's assertions that Anthony Gregg is not entitled to recovery since he knew about the untoward conduct before the marriage. Furthermore, plaintiffs left Anthony's name off the caption in their opposition brief—as defendants suggested in their summary judgment motion—a further indication that the Greggs have chosen not to continue this claim.

▮ Even on the merits, however, defendant would be entitled to summary judgment on this claim. Defendant argued that, based on depositions, Anthony Gregg knew of Clark's conduct toward Debra before the Greggs married, a claim supported by the evidence. Plaintiff did not dispute this. Def.'s Stat. of Mat. Facts 12; Pl.'s Cntrstat. 2. If the alleged unlawful conduct and injury were known or knowable prior to the marriage, a spouse may not recover for loss of consortium damages. *Wiggins v. Equifax Services, Inc.*, 848 F.Supp. 213, 226 (D.D.C. 1993). Summary judgment is thus entered for defendant on this final count, as well.

### E. Conclusion

After thoroughly examining the facts in a light most favorable to the plaintiff, the rec-

---

**8.** It should be noted that plaintiff's complaint alleges only that defendant's conduct has "caused plaintiff to undergo severe humiliation, embarrassment, and emotional pain and suffering." Compl. 4. It is assumed that plaintiff is

stating a cause for intentional infliction of emotional distress (rather than negligent infliction of emotional distress), given that plaintiff further alleges that the emotional pain and suffering is a result of "willful and deliberate conduct." *Id.*

ord does not establish a triable issue of liability against the Hay–Adams Hotel. The Hotel's prompt and effective remedial actions were sufficient to negate any potential liability under Title VII, even assuming that Clark's actions could be imputed to the Hotel in the first place.

With respect to Gregg's claims of retaliation, it is clear that she has not carried her burden of proving causation nor has she countered the Hotel's legitimate reasons for issuing her written warnings by alleging pretext; with regard to her claims for emotional distress and punitive damages, the facts will simply not support her claims. Finally, as to Anthony Gregg's count of lack of consortium, this, too, is dismissed, if it can even be said to be properly before the court.

A separate order shall issue this date granting defendant's Motion for Summary Judgment.

SO ORDERED.

### ORDER

For the reasons expressed in the Court's accompanying Memorandum Opinion, it is

ORDERED that defendant Hay–Adams Hotel's Motion for Summary Judgment is GRANTED, and it is further

ORDERED that this case is DISMISSED.

SO ORDERED.