Stanley J. WOODRUFF, Sr., Plaintiff,

v.

Michael F. DIMARIO, Public Printer, Government Printing Office, Defendant.

Civil Action No. 00–0143(RMU).

United States District Court, District of Columbia.

Aug. 22, 2001.

Joseph L. Gibson, Jr., Gibson, Jones & Kumar, Riverdale, Md, for plaintiff.

Laurie L. Weinstein, Assistant U.S Attorney, Washington, DC, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Stanley J. Woodruff, Sr. ("the plaintiff" or "Mr. Woodruff") brings this employment-discrimination case against the United States Government Printing Office ("the defendant" or "GPO"). Mr. Woodruff alleges that the GPO violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, by discriminating against him on the basis of his race (black), color (black), and gender (male), and in retaliation for his prior EEO activities. Specifically, the

plaintiff claims that the defendant discriminated against him when the GPO passed him over for the position of Video head deskman and gave the promotion to a white woman. The defendant now moves for summary judgment. For the reasons that follow, the court will grant the defendant's motion on both counts.

## II. BACKGROUND

Stanley Woodruff, an African–American man, brings this action against his employer, the United States Government Printing Office, for alleged acts of unlawful employment discrimination and retaliation. *See* Compl. at 2. He seeks compensatory damages, including back pay and adjustment of benefits, as well as a retroactive promotion. *See id.* Mr. Woodruff's claims arise from a promotion he applied for but did not receive.[1] *See* Compl. at 8. Although the GPO had identified Mr. Woodruff as one of the seven best qualified candidates for the position, the selecting officers passed him over in favor of a white female, Judith Miller, whom they had also named as one of the seven best qualified candidates. *See id.*

Mr. Woodruff alleges that Ms. Miller's promotion, which occurred on June 21, 1993, constituted discrimination on the basis of Mr. Woodruff's race (black), color (black), and sex (male), in violation of Title VII. *See* Compl. at 9. In addition, Mr. Woodruff charges that the GPO violated Title VII by retaliating against him. *See id.*

The principal factual allegations are as follows. In April 1972, the GPO hired Mr. Woodruff as a security policeman. *See* Compl. at 6. In 1974, the GPO assigned him to the Composition Division, now the Electronic Photocomposition Division ("EPD"), which was "overwhelmingly comprised" of black men. *See id.* In 1978, the GPO revamped the EPD with new technology. Mr. Woodruff and several of his coworkers, also black men, brought a racial-discrimination suit against the division for not training them in the new technology. *See id.* (citing *Brewington v. Boyle,* Dkt. No. 78–1290 (D.D.C.1979)). The suit eventually settled and Mr. Woodruff received the training he requested. Thereafter, in 1986, the GPO placed him in the Video Keyboard Section of the EPD as a Printing Specialist. *See id.* Mr. Woodruff left the Video Keyboard Section by December 1988 and moved to the GPO's Production Control and Scheduling Section, Production Planning and Control Division. *See* Mot. for Summ. J. n. 1; *see also* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Woodruff Decl.

Sometime in 1991, Mr. Woodruff was involved in an incident in which he placed a brown paper bag over his head to protest management's decision to hire three groups of 20 employee trainees because in each group black males were allegedly underrepresented. *See* Pl.'s Opp'n at 8. On September 4, 1991, Mr. Woodruff filed a formal EEO complaint with the GPO alleging that "white employees were being detailed by the GPO to Capitol Hill to preferred jobs and that Black employees were not given equal opportunities to be detailed to these preferred jobs." *See id.* at 9. The plaintiff sent a copy of this formal EEO complaint to the Joint Committee on Printing, United States Congress. *See id.* This EEO complaint generated a letter of inquiry from Congressman Charles Rosen, Chairman of the Joint Committee on

---

1. The plaintiff sought a promotion to Video head deskman of the Keyboard Section, Electronic Photocomposition Division, Production Department, GPO. On May 21, 1993, the GPO issued Merit Promotion Vacancy Announcement No. 93–81, advertising for the position. *See* Compl. at 7.

Printing, to the then-head of the GPO, Robert W. Houk. *See id.*

The three managers who selected Judith Miller for promotion to Video head deskman were Charles E. Daily (Foreman, Video Keyboard Section, Shift 1), Robert Schwenk (Superintendent of the EPD), and Glen H. Rottman (Director of Production Services). *See* Compl. at 8. All three are white men. *See id.* Mr. Daily was the selecting officer, Mr. Schwenk the concurring officer, and Mr. Rottman the officer who gave final approval to Ms. Miller's selection. *See id.*

Mr. Woodruff filed this complaint on January 27, 2000.[2] At the time, the plaintiff held the position of Printing Specialist in the Production Control and Scheduling Section of the Production Planning and Control Division. *See* Mot. for Summ. J. n. 1; Pl.'s Opp'n (Woodruff Decl.). The plaintiff claims that the reasons stated by Mr. Daily, Mr. Schwenk, and Mr. Rottman for denying Mr. Woodruff the promotion to Video head deskman are in reality a pretext for discrimination on the basis of race, color, and gender, and in reprisal for the plaintiff's prior protected activity. *See* Compl. at 7–8.

On May 10, 2000, the defendant filed a motion to dismiss the retaliation claim for failure to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). On October 31, 2000, this court held that because the plaintiff need not make a prima-facie case of retaliation at the initial pleading stage, the complaint stated a claim for retaliation on which relief may be granted. *See Woodruff v. DiMario*, 197 F.R.D. 191 (D.D.C. 2000) (Urbina, J.) (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114–15 (D.C.Cir.2000)). Accordingly, the court

denied the defendants' motion to dismiss the retaliation claim. *See id.*

Now that discovery has closed, the defendants move for summary judgment on the plaintiff's discrimination and retaliation claims.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the mov-

---

**2.** The court cannot include more background regarding the chronology of events at the administrative level because the parties did not include this information in their briefs.

ing party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Center,* 116 F.3d 876, 879–80 (D.C.Cir.1997); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

### B. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination or retaliation under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima-facie case of discrimination. Second, if the plaintiff succeeds in proving the prima-facie case, the bur-

den shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination or retaliation. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (*en banc*); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). As a general matter, a prima-facie case of discriminatory denial of promotion based on race, color or sex consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). To demonstrate a prima-facie case of retaliation, the plaintiff must establish that: (1) the plaintiff was engaged in a protected activity; (2) the employer took an adverse personnel action against her; and (3) there is

a causal link between the adverse action and the protected activity. *See Jones v. Washington Metropolitan Area Transit Authority*, 205 F.3d 428, 433 (D.C.Cir. 2000).

■ If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802–805, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine*, 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. *See id.* As the Eleventh Circuit has explained:

[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

■ Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'' and that the plaintiff's membership in a protected class (or his protected activity) was the true reason for the employment action. *See Reeves*, 120 S.Ct. at 2106 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves*, 120 S.Ct. at 2106; *Aka*, 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima-

facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *See Reeves,* 120 S.Ct. at 2106 (citing *Burdine,* 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin,* 116 F.3d at 1554. In *Aka,* the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka,* 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima-facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*See Aka,* 156 F.3d at 1289.

In *Reeves,* the Supreme Court reaffirmed the principles set forth in *Aka.* Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima-facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves,* 120 S.Ct. at 2109; *see also Aka,* 156 F.3d at 1289.

Lastly, the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982)); *see also Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin,* 116 F.3d at 1556 (quoting *Fischbach,* 86 F.3d at 1183). "It is not enough ... to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves,* 120 S.Ct. at 2108 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Applying these legal standards to the instant case, the court will grant the defendant's motion for summary judgment on both counts.

### C. The Plaintiff's Discrimination Claim

In its motion for summary judgment, the defendant argues that the plaintiff has not established a prima-facie case of discrimination by a preponderance of the evidence. *See* Mot. for Summ. J. at 4. The court disagrees.

 In the complaint and opposition to summary judgment, the plaintiff, a black male, alleges that he was treated in a disparate manner from Ms. Judith Miller, a similarly situated white female employee, when the defendant failed to promote the plaintiff to the position of Video head deskman on or about June 21, 1993. *See* Pl.'s Opp'n at 1. Specifically, the plaintiff alleges that his overall qualifications for the position of Video head deskman were at least

equal to, if not superior to, those of Ms. Miller. *See* Pl.'s Opp'n at 5. The plaintiff submits that this conclusion can be reached with a "fair review" of his experience, leave record, and performance within the Electronic Photocomposition Division. *See id.* He also argues that his experience and education qualifications for the position exceeded Ms. Miller's. *See id.* Finally, the plaintiff contends that the real reasons for his non-selection were his race, color, and gender, and his prior EEO activity. *See id.*

The plaintiff has established a prima-facie case. As an African–American, he is a member of a protected class. Since the defendant rated both the plaintiff and Ms. Miller as one of the seven "best qualified candidates" for the position, the plaintiff and Ms. Miller were similarly situated. *See* Def.'s Mot. for Summ. J. at 4. Next, the plaintiff was indisputably denied the promotion. Finally, the position was filled by a similarly situated employee who was not a member of the protected class.

Continuing with the *McDonnell Douglas* framework, the court determines that the defendant has satisfied its burden of production by offering a legitimate, nondiscriminatory reason for not promoting the plaintiff to the position of Video head deskman. The defendant submits that the GPO selected Ms. Miller for the position of Video head deskman on the basis of her "extensive experience in the field, including supervisory experience outside of GPO, and because she had shown that she could perform capably while acting in the position over the years preceding her selection." Mot. for Summ. J. at 2. The defendant points to Ms. Miller's experience and education, in particular her Printing Specialist Degree from George Washington University. *See* Def.'s Reply to Pl.'s Opp'n to Summ. J. ("Def.'s Reply") at 4.

The plaintiff responds by arguing that he has presented sufficient evidence to call into question whether the defendant's proffered reason for its decision to promote Ms. Miller instead of the plaintiff was pretextual. The court does not share his position and grants summary judgment to the defendant on the plaintiff's discrimination claim.

In his opposition, the plaintiff maintains that there are many genuine issues of material fact that must be resolved by a factfinder. *See* Pl.'s Opp'n at 2. First, the plaintiff directs the court's attention to massive sections of the June 17, 1997 Report of Investigation (ROI) prepared by National Employment Practices, Inc., the contractor the defendant hired to investigate the plaintiff's EEO complaint. The plaintiff, however, does not offer concrete, admissible evidence to support his allegations. *See id.* at 4, 5. Because the plaintiff fails to specify any genuine issues of material fact that are in dispute and merely refers the court to attachments found in the ROI, the plaintiff places the court in the untenable position of having to divine the plaintiff's arguments from a document containing hundreds of pages.

Moreover, in the final analysis, all of this is immaterial. The court concludes that because the plaintiff relies only on his own statements and allegations of unlawful discriminatory pretext, he has presented no other evidence that would allow a reasonable jury to infer that he suffered race or gender-based discrimination when the defendant promoted Ms. Miller instead of him. As the Supreme Court cautioned in *Anderson,* the plaintiff must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. This plaintiff has not met his burden. Thus, the court grants the defendant's motion for summary judgment on the plaintiff's discrimination claim.

## D. The Plaintiff's Claim of Unlawful Retaliation

To establish a prima-facie case of retaliation the plaintiff must demonstrate that (1) he engaged in protected activity; (2) the employer took an adverse personnel action against him; and (3) there is a causal link between the adverse action and the protected activity. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. There is no question that the plaintiff engaged in protected activities in 1979 and 1991. The defendant argues that there were only two protected activities instead of three. Even assuming *arguendo* that all three activities are considered protected, the plaintiff still fails to establish a causal link between the protected activity and the alleged retaliation.

The first protected activity set forth in the complaint was the class-action lawsuit, in which the plaintiff was a class member, that settled in 1979. *See* Pl.'s Opp'n at 7. In addition to this protected activity, the plaintiff argues that there were two other instances where he participated in protected activities. Specifically, the plaintiff points the court to a formal EEO complaint with the GPO alleging that white employees were "being detailed by the Agency to Capitol Hill to referred jobs and that Black employees were not given equal opportunity to be detailed to these preferred jobs." *See* Pl.'s Opp'n at 9. The plaintiff sent a copy of this formal EEO complaint to the Joint Committee on Printing of the United States Congress. The plaintiff alleges that the complaint generated a letter of inquiry from Congressman Charles Rose, Chairman of the Joint Committee on Printing, to the head of the GPO, Robert W. Houk, on June 4, 1992. *See id.* The defendant does not dispute that these two activities are protected under Title VII. *See* Def.'s Reply at 5.

In addition to these two protected activities, the plaintiff submits that there was a third protected activity sometime in 1991 when he was involved in what has been referred to as the "paper bag incident." *See id.* The plaintiff placed a bag over his head while at work to express his disapproval of "Agency management having hired three groups of twenty employee trainees each in which Black males were allegedly underrepresented." *See id.* The defendant responds by arguing that the "paper bag incident" should not be classified as a protected activity. *See* Def.'s Reply at 5, 6. The court, however, need not decide whether the paper bag incident constituted a protected activity. The plaintiff states that the incident occurred in 1991, and in terms of the timeline for a causal connection, the court has already held that the plaintiff's filing of the formal EEO complaint, which occurred September 4, 1991, was a protected activity.

■ The essence of the court's retaliation analysis focuses on the third prong of the prima-facie case of retaliation, i.e., whether the plaintiff has shown a causal link between his protected activity in 1979 and 1991 and his failure to receive the promotion. Mr. Woodruff must make a prima-facie showing that the adverse actions would not have occurred "but for" his engaging in the protected activity. *See Gregg v. Hay–Adams Hotel*, 942 F.Supp. 1, 8 (D.D.C.1996). The more time that elapses between the protected activity and the alleged acts of retaliation, the more difficult it is to justify an inference of causal connection between the two. *See Saunders v. DiMario*, 1998 WL 525798 *4, *5 (D.D.C.1998) (the plaintiff failed to establish the causal nexus necessary for a retaliation claim where the allegedly retaliatory non-hiring occurred eight to ten years after his filing of an EEO complaint); *accord Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir.1998) (a seven-month time lapse "negates any inference that a causal connec-

tion exists between the filing of the EEO complaint and the plaintiff's termination"); *Harris v. Rector Bd. of Visitors of Univ. of Virginia,* 1996 WL 199551, \*2 (4th Cir. 1996) (district court properly dismissed retaliation claim where complaints occurred 35 months before employer declined to appoint employee to a new position); *Clark v. Chrysler Corp.,* 673 F.2d 921, 930 (7th Cir.1982) (absent other evidence of causation, a sufficiently great lapse of time—in this case, two years—warrants judgment for the defendants as a matter of law on retaliation claim). This court has held that a lapse of even two years between the filing of an EEO charge and the alleged retaliatory action can negate an inference of retaliatory motive. *See Townsend v. Washington Metro. Area Transit Auth.,* 746 F.Supp. 178, 187 (D.D.C.1990).

■ In this case, the plaintiff claims the defendant retaliated against him because of his earlier protected activity by denying his bid for a promotion to Video head deskman. The plaintiff argues that:

> a causal link between the adverse employment action and the protected activity can be inferred, given the depth and magnitude of the protected activity, its knowledge by and impact upon the highest levels of GPO management, its specific knowledge by Mr. Robert. E. Schwenk, and the reasonably close temporal proximity between the 1991–1992[sic] protected activity and the denial of promotion on June 21, 1992[sic].[3]

Pl.'s Opp'n at 11. The court disagrees with the plaintiff's argument and holds that without concrete, admissible evidence, the plaintiff has failed to establish a causal

connection between the protected activity in 1979 and 1991 and the alleged retaliation in 1993.

Because the court holds that the plaintiff has not established a prima-facie case of retaliation, it need not proceed with the *McDonnell Douglas* analysis. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's retaliation claim.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of August, 2001.

**3.** The plaintiff's use of the 1992 date in this portion of his opposition is clearly erroneous. Throughout the briefs, except in this instance, both parties refer to the date of Ms. Miller's promotion as "on or about June 1993," after the closing date of vacancy announcement # 93–81 on June 3, 1993. Indeed, in their opposition brief, the plaintiffs include Exhibit 7, which is a document showing that the vacancy announcement was issued on May 21, 1993, and closed on June 3, 1993. Thus, the plaintiff is mistaken when he states that the denial-of-promotion date was "June 21, 1992."