**Jeffrey TIMMONS, Plaintiff,**

v.

**U.S. CAPITOL POLICE BOARD, Defendant.**

**No. Civ.A. 00–2646(RJL).**

United States District Court, District of Columbia.

March 14, 2005.

John V. Berry, Harold M. Vaught, Washington, DC, for Plaintiff.

Frederick Michael Herrera, United States Capitol Police, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

LEON, District Judge.

Plaintiff Jeffrey Timmons commenced the instant action against his employer, the U.S. Capitol Police Board ("defendant" or "Board"), alleging that the Board violated the Congressional Accountability Act of 1995, 2 U.S.C. § 1317 ("CAA" or "Act") when it denied him a promotion during the

1998–2000 promotion process in retaliation for bringing a gender discrimination claim. Presently before the Court is the Board's motion for summary judgment. The Board argues that the plaintiff has not established a prima facie case for retaliation because he has not demonstrated that any logical nexus exists between his gender discrimination claim (the "protected activity") and his non-promotion (the "adverse employment action"). The plaintiff, on the other hand, contends that the Board's motion should be denied because the purported reason for denying him a promotion is a pretext for unlawful retaliation. For the following reasons, the Court agrees with the Board, grants the motion for summary judgment, and dismisses the action with prejudice.

## I. BACKGROUND

Plaintiff is a Private First Class with the U.S. Capitol Police ("Capitol Police"). Def.'s Statement of Material Facts ("Def.'s SMF"), p. 2. This case involves plaintiff's complaint that he was improperly denied a promotion to the rank of Sergeant during the 1998–2000 promotions process.

### A. The Promotions Process

Every two years, the Capitol Police conduct promotion examinations for the rank of Sergeant. Information regarding the promotional process is set forth in a Special Order issued by the Chief of Police. Def.'s MSJ, Exhibit 2 ("Exh. 2"), p. 1. The promotions procedure consists of a three-part process, with the first two parts consisting of a written and oral examination conducted by an independent firm. Exh. 2, pp. 2–3. Upon successful completion of the first two stages, participating candidates are ranked by the independent firm and their names are placed on a promotions list. Exh. 2, p. 4.

Candidates are eligible for promotion once the promotions list has been created and a position for Sergeant becomes available. At that point, the Chief of Police solicits input from those supervisors who substantially supervised an eligible candidate during the preceding three years. Exh. 2, p. 4. The supervisors are asked to submit a "promote" or "don't promote" recommendation and if any "don't promote" recommendations are given, the Chief of Police convenes a roundtable meeting with the supervisors to discuss the officer's performance and qualifications for Sergeant. *Id.* Based on the input received at this meeting, the Chief of Police submits a recommendation to the Board, and the Board makes the final decision regarding promotions. Exh. 2, p. 5.

### B. Facts Relevant to Plaintiff's Case

In May 1998, plaintiff filed a claim for gender discrimination with the Office of Compliance ("OC") after being informed that he was not selected for a promotion to the rank of Sergeant during the 1996–1998 promotional process. Pl's Statement of Facts ("Pl.'s SOF"), p. 4. On January 22, 1999, following a hearing on the matter, the OC dismissed plaintiff's claim and entered judgment in favor of the Board. Def.'s SMF, p. 3.

Before the OC adjudicated plaintiff's discrimination claim, however, the plaintiff became eligible to compete for promotion in the 1998–2000 promotional process. Def.'s MSJ, Exhibit 4 ("Exh. 4"), ¶ 10. Upon completion of the first two parts of the promotion process, the plaintiff ranked twelfth out of a field of approximately 660 employees eligible to compete for promotion. *Id.* However, at the supervisory input stage, plaintiff received "don't promote" recommendations from three supervisors. Def.'s MSJ, Exhibits 7–9. As a result of these negative recommendations,

the procedure set forth in the Special Order required the Chief of Police, Gary L. Albrecht, to convene a roundtable meeting with plaintiff's supervisors to further discuss his candidacy, Exh. 2, p. 4.

After the roundtable meeting, Chief Albrecht did not believe plaintiff was ready for promotion and, as a result, he made a written recommendation to the Board that plaintiff not be promoted. Def.'s MSJ, Exhibit 15 ("Exh. 15") (Chief Albrecht's formal written recommendation to the Board). In his written memorandum, Chief Albrecht stated that his recommendation was based on the views of plaintiff's supervisors and a review of plaintiff's personnel files and performance evaluation. *Id.* The Board accepted Chief Albrecht's recommendation, and, on January 25, 2000, the plaintiff was notified that he had been passed over for promotion in a meeting with Deputy Chief James Rohan. Def.'s MSJ, Exhibit 1 ("Exh. 1"), p. 16; *Id.*, Exhibit 16 ("Exh. 16"), ¶ 5. At the meeting, Deputy Chief Rohan told the plaintiff that he had been passed over based on supervisory input received from officers in plaintiff's chain of command, and based on a command discipline for neglect of duty. Exh. 16 ¶¶ 6–7. Thereafter, plaintiff filed a formal request for counseling on June 9, 2000, on grounds that the denial of promotion was motivated by a retaliatory intent for his earlier discrimination claim. After completing counseling and mediation under the Congressional Accountability Act, plaintiff commenced the instant action in this Court.

## II. ANALYSIS

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, our Circuit Court instructs that summary judgment motions in discrimination cases should be viewed with special caution in light of the difficulty in establishing proof of discrimination. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C.Cir.1997).

■ The plaintiff in this case argues that the Board's motion for summary judgment should be denied because the purported reason for denying him a promotion to the rank of Sergeant is a pretext for retaliating against him for filing the gender discrimination complaint. Pl.'s Opp., p. 7. To establish a prima facie case of retaliation, the plaintiff must make the following three-part showing: (1) he engaged in protected activity; (2) the employer took an adverse-personnel action against him; and (3) there is a causal link between the adverse action and the protected activity. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Woodruff v. Dimario*, 164 F.Supp.2d 1, 5 (D.D.C.2001). The Board does not dispute that the plaintiff has satisfied the first two prongs of the foregoing test, and argues instead that the plaintiff has not demonstrated that there is a connection between the gender discrimination complaint and the denial of a promotion. *See* Def.'s MSJ, pp. 9–27. The narrow issue before the Court, therefore, is whether the plaintiff has satisfied the third prong of the prima facie case for retaliation, i.e., whether the plaintiff has demonstrated a causal link between the

gender discrimination complaint filed in May 1998 and his non-promotion in January 2000. For the following reasons, the Court concludes that he has not.

 To demonstrate causation, the plaintiff must show that the Board would not have denied him a promotion "but for" his filing a complaint with the OC. *See Lockamy v. Truesdale,* 182 F.Supp.2d 26, 37 (D.D.C.2001); *Gregg v. Hay–Adams Hotel,* 942 F.Supp. 1, 8 (D.D.C.1996). The plaintiff can make this showing through direct or circumstantial evidence. *Alexis v. District of Columbia,* 44 F.Supp.2d 331, 347 (D.D.C.1999). In the absence of direct evidence, such as in this case, the plaintiff can establish causation by showing that the employer had *knowledge* of the protected activity and the adverse action *occurred soon after* the protected activity. *Holbrook v. Reno,* 196 F.3d 255, 263 (D.C.Cir.1999). These are the "knowledge" and "timing" requirements.

 The primary evidence offered by the plaintiff to support his retaliation claim is that Police Chief Albrecht and Deputy Chief Rohan knew about plaintiff's gender discrimination complaint and performed integral roles in denying his promotion. Pl.'s Opp., pp., 7–9. This information, without more, does not establish the causal connection required to prove a prima facie case of retaliation. First, although Albrecht and Rohan knew that plaintiff had filed the gender discrimination complaint in May 1998, the Board's decision to deny plaintiff a promotion was based upon considerably more evidence than just the input of these officers. Chief Albrecht, for example, made his "don't promote" recommendation only after listening to the opinion of plaintiff's supervisors and reviewing plaintiff's personnel file. Exh. 15, p. 1. Three of plaintiff's supervisors made "don't promote" recommendations based upon plaintiff's personnel evaluations, their

own personnel performance notes, and other disciplinary actions concerning the plaintiff. *See* Exhs. 10, 12–13 (Affidavits of Officers Krug, Morse, and Hawco). Moreover, the plaintiff has offered no evidence that these three supervisors knew of his discrimination complaint. Indeed, the defendant has submitted evidence to the contrary in the form of affidavits from plaintiff's supervising officers who represent that they had no knowledge of the complaint when they made their non-promotion recommendations. *See id.*

Finally, the time span between the plaintiff's discrimination complaint and the denial of his promotion also supports this Court's conclusion that the plaintiff has failed to meet his burden. *See Ball v. Tanoue,* 133 F.Supp.2d 84, 91 (D.D.C. 2001) ("The greater the time that elapses between the protected activity and the alleged acts of retaliation ... the more difficult it is to demonstrate any causal connection and, absent any other evidence, where the gap is sufficiently great, it is appropriate to grant judgment as a matter of law."). Accordingly, the Court concludes that the plaintiff has not established a prima facie case for retaliation and, therefore, that judgment should be granted in favor of the Board.

### III. CONCLUSION

For all these reasons, the Court grants the defendant's motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously filed herewith.

SO ORDERED.