**Enoch J. LOCKAMY, Jr. Plaintiff,**

v.

**John TRUESDALE, Chairman, U.S. National Labor Relations Board, Defendant.**

**No. CIV. A. 00–0230(RMU).**

United States District Court, District of Columbia.

Oct. 15, 2001.

Robert L. Bell, C. Vaughan Adams, Bell & Adams, Washington, D.C., for the Plaintiff.

William Mark Nebeker, U.S. Attorney's Office, Washington, D.C., for the Defendant.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

On February 9, 2000, Enoch J. Lockamy ("the plaintiff" or "Mr. Lockamy"), an African–American male, filed a four-count complaint against John Truesdale, sued in his official capacity as Chairman of the U.S. National Labor Relations Board ("the defendant" or "the NLRB"). In Count I,

the plaintiff alleges that the NLRB violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e *et seq.*, by discriminating against him on the basis of his race and protected activities by failing to promote him to a senior space management position. Count II sets forth allegations that the defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by refusing to promote the plaintiff because of his age. In Count III, the plaintiff claims that the defendant refused to promote him in retaliation for his prior EEO activities. Lastly, in Count IV, the plaintiff charges that he has suffered intentional infliction of emotional distress as a result of the alleged discrimination.

On July 9, 2001, the defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The defendant argues that Mr. Lockamy has failed to exhaust all his administrative remedies and has failed to establish a prima-facie case of discrimination for failure to promote under Title VII and the ADEA. While the court concludes that the plaintiff has exhausted his administrative remedies, he has failed to make prima-facie cases of discrimination under Title VII and the ADEA. The court also determines that the plaintiff has failed to set forth prima-facie cases of retaliation for his prior Equal Employment Opportunity ("EEO") activities and intentional infliction of emotional distress. Accordingly, the court will grant the defendant's motion for summary judgment on all four counts.

## II. BACKGROUND

Enoch Lockamy, an African–American male in his mid–50s, began his career at the NLRB as a Motor Vehicle Operator in 1975. *See* Compl. at 3. The NLRB hired him as a space management specialist in its procurement and facilities branch at the GS–7 level in October 1988. *See id.* at 3–4. By 1989, Mr. Lockamy was performing the same position at the GS–9 level. *See id.* at 4. In the early 1990s, Mr. Lockamy claims he was the victim of repeated discriminatory behavior by his supervisor, Tony Hardin ("Mr. Hardin"). *See id.* at 4–6. Specifically, Mr. Lockamy claims that Mr. Hardin is a "racist," that he cursed at the plaintiff, accused him of abusing his leave time to care for his ailing father, and insulted the plaintiff in a racially hostile manner on multiple occasions. *See id.* at 4–5. Mr. Lockamy also claims that Mr. Hardin sabotaged and unfairly scrutinized his work, that he told the plaintiff that he could not address white employees by their first names, and that the plaintiff could not use a typewriter that other procurement-branch employees could use. *See id.* at 5.

In July 1993, Mr. Lockamy filed an informal complaint of discrimination against Mr. Hardin because of his alleged discriminatory behavior, which Mr. Lockamy later withdrew. *See id.* at 5; Def.'s Mot. to Dismiss and for Summ. J. ("Mot. for Summ. J.") at 2. In April 1994, Mr. Lockamy requested a promotion to a GS–11 position. *See* Compl. at 5. Mr. Hardin denied this request. *See id.* In July 1995, Mr. Lockamy left his GS–9 level space management position at the NLRB and took a GS–9 telecommunications specialist position "to escape the racist behavior of Mr. Hardin." *See* Compl. at 6. While Mr. Hardin remained his overall supervisor, Mr. Lockamy reported directly to an African–American male in this new position. *See id.*

Mr. Lockamy's former space management position remained unfilled until May 1996 when Norman King ("Mr. King"), a white male under the age of 40, was detailed to the NLRB from the Department of the Interior ("DOI"). *See id.* Mr. King

had operated at the GS–12 level at the DOI. *See id.* On September 13, 1996, Mr. Lockamy saw a vacancy announcement for a space management specialist position at the GS–12 level. *See id.* at 6–7. The plaintiff claims that this position was "virtually identical" to his GS–9 space management position. *See id.* The defendant counters that the description for the GS–12 position contained substantially more job responsibility and was created to deal with substantive programmatic and procedural changes within the agency. *See* Mot. for Summ. J. at 3.

On September 16, 1996, Mr. Lockamy contacted an EEO counselor regarding the GS–12 position and subsequently wrote to Mr. James Sunderlin, the branch chief, requesting that Mr. Sunderlin explain why the space management position was posted at the GS–12 level, and telling Mr. Sunderlin that such a classification "systematically excluded him." *See* Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n") at 3. The defendant maintains that the position was classified at the GS–12 level because "officials within the agency believed that the position required journeyman level technical expertise, the ability to work independently, make independent judgments, and recommend and influence agency space policy." *See* Mot. for Summ. J. at 12.

The NLRB selected Mr. King for the GS–12 position on September 30, 1996. *See* Compl. at 7. Mr. Lockamy says that he became aware of his selection on October 25, 1996. See Pl.'s Opp'n at 3. After meeting with an EEO Counselor on September 20, 1996 and November 14, 1996, the plaintiff filed his formal EEO complaint on November 22, 1996. *See id.;* EEO Counselor's Report ("EEO Report") ¶¶ 5, 6, 9. On November 8, 1999, the Equal Employment Opportunity Commission ("EEOC") issued a letter giving Mr. Lockamy the right to sue. *See* Compl. at 3. Mr. Lockamy filed this case on February 9, 2000. The defendant now moves to dismiss and for summary judgment.[1]

## III. ANALYSIS

### A. The Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)

#### 1. Legal Standard for Motion to Dismiss

■ On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States,* 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overturned on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *See, e.g., Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990).

Moreover, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds by* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, the court may consider such materials outside the pleadings as it

---

1. The defendant argues that the plaintiff failed to name a proper party defendant in this case. *See* Mot. for Summ. J. at 8–9. The plaintiff moved to substitute the General Counsel of the NLRB as the proper defendant. *See* Reply at 7. The court hereby grants the plaintiff's motion to substitute the party.

deems appropriate to determine whether it has jurisdiction in the case. *See Herbert v. National Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992).

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. *See* FED. R. CIV. P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *See* FED. R. CIV. P. 12(b)(6); *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. In addition, the plaintiff need not plead the elements of a prima-facie case in the complaint. *See Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C.Cir.1996). Moreover, the court should draw all reasonable inferences in the nonmovant's favor. *See Judicial Watch, Inc. v. Clinton,* 880 F.Supp. 1, 7 (D.D.C.1995).

## 2. The Plaintiff Has Exhausted His Administrative Remedies in a Timely Manner

■ As a threshold matter, the defendant claims that the plaintiff has not complied with the EEOC regulations regarding counseling deadlines. Before filing a discrimination suit in federal court, a Title VII plaintiff must exhaust his administrative remedies. *See Brown v. General Serv. Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The Code of Federal Regulations ("CFR") states that individuals wishing to bring suit on the basis of race, color, religion, sex, national origin, age, or handicap must first attempt to resolve the matter informally with an EEO counselor, and that the initial contact with the counselor must take place within 45 days of the defendant's allegedly discriminatory action. *See* 29 C.F.R. § 1614.105(a). The CFR also provides that the 45–day limitations period is triggered when a "complainant should reasonably suspect discrimination, but before all the facts that would support a charge of discrimination have become apparent." 29 C.F.R. § 1614.105(b).

In this case, the plaintiff first sought EEO counseling on September 16, 1996, three days after the defendant posted the vacancy announcement for the GS–12 space management position. *See* Mot. for Summ. J. at 7–8. After meeting with an EEO Counselor on September 20, 1996 and November 14, 1996, the plaintiff filed his formal EEO complaint on November 22, 1996. *See* EEO Report ¶¶ 5, 6, 9. The defendant asserts that since the plaintiff's complaint contains allegations going back to 1991 through 1995, and not merely the September 13, 1996 vacancy announcement posting of a GS–12 space management position, the plaintiff was untimely in exhausting his administrative remedies. *See* Mot. for Summ. J. at 8. For example, the defendant suggests that since the plaintiff viewed his supervisor's failure to increase his GS–9 space management position to a GS–11 level in April 1994, he should have filed an EEO complaint at that time. *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss and for Summ. J. ("Reply") at 7–8.

While the plaintiff claims that he suffered ongoing discrimination by his supervisor, Mr. Hardin, the plaintiff bases his complaint on the facts that the defendant created a GS–12 space management position and selected a younger white male for the position. As such, given that the

plaintiff made initial contact with an EEO official well within the 45–day limitations period, the court holds that the plaintiff properly exhausted his administrative remedies. Therefore, the court determines that it has subject-matter jurisdiction and denies the defendant's motion to dismiss pursuant to Rule 12(b)(1).[2]

## B. Defendant's Motion for Summary Judgment Pursuant to Rule 56(c)

### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106

S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir. 1997); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

### 2. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court explained this scheme as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimi-

---

2. The court will assume *arguendo* that the plaintiff has stated a claim on all four counts and can survive the defendant's motion to dismiss pursuant to Rule 12(b)(6). The court will now proceed with its summary-judgment analysis.

nation. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir. 1998) (en banc); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (the *McDonnell Douglas* framework applies in ADEA cases). As a general matter, a prima-facie case of discriminatory denial of promotion based on race, color, or age consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). To demonstrate a prima-facie case of retaliation, the plaintiff must establish that: (1) the plaintiff was engaged in a protected activity; (2) the employer took an adverse-personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *See Jones v. Washington Metropolitan Area Transit Authority,* 205 F.3d 428, 433 (D.C.Cir. 2000).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *See McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See id.* As the Eleventh Circuit has explained:

[I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appear-

ance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (en banc).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'' and that the plaintiff's membership in a protected class was the true reason for the employment action. *See Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097; *Aka,* 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establish-

ing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *See Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (citing *Burdine,* 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin,* 116 F.3d at 1554. In *Aka,* the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka,* 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*See Aka,* 156 F.3d at 1289.

In *Reeves,* the Supreme Court reaffirmed the principles set forth in *Aka.* Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima facie

case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves,* 530 U.S. at 147–49, 120 S.Ct. 2097; *see also Aka,* 156 F.3d at 1289.

Lastly, the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982)); *see Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin,* 116 F.3d at 1556 (quoting *Fischbach,* 86 F.3d at 1183). "It is not enough … to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Applying these legal standards to the instant case, the court grants the defendant's motion for summary judgment on all four counts.

### 3. The Plaintiff's Title VII Claim

 The defendant argues that the plaintiff has not established a prima-facie case of race discrimination by a preponderance of the evidence. *See* Mot. for Summ. J. at 9–10. The court agrees.

As an African–American male, the plaintiff is a member of a protected class. *See* Compl. at 2. But even assuming *arguendo* that Mr. Lockamy was qualified for the GS–12 position, he did not apply for the position. The plaintiff claims that he was prevented from applying by "intentional and discriminatory classification of the Space Management position from a GS–9 to a GS–12 to reserve the position for Norman King," and should thus be considered a "deterred non-applicant" who still meets the element for having applied for the position. *See* Pl.'s Opp'n at 8. The plaintiff relies on a Fourth Circuit case holding that "[a]lthough a plaintiff who did not apply for a position is not foreclosed from success in an employment discrimination action, in such a situation the plaintiff must establish that she was inhibited from applying because of the employer's discriminatory practices." *See Robinson v. Montgomery Ward and Co., Inc.,* 823 F.2d 793, 796 (4th Cir.1987) (citing *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

The defendant asserts that applying *Robinson* to the case at hand demonstrates that the plaintiff in this case has not established a prima-facie case of discrimination. *See* Reply at 8–9. The court agrees. In *Robinson,* the court stated that:

the plaintiff admitted she did not apply for the position but asserted no argument whatsoever that she was in any way inhibited from making an application by Montgomery Ward's alleged discriminatory practices. Plaintiff's assertions about racial remarks and training discussed infra, do not rise to the level of proof required for a showing of intentional discrimination. Consequently, the district court was entirely correct in finding that the plaintiff had not carried her burden as to the second, third, and fourth elements of *McDonnell Douglas.*

*Robinson,* 823 F.2d at 796. Just as in *Robinson,* the plaintiff did not apply for the GS–12 position, and was therefore not rejected for the position. *See id.* The plaintiff may have been ineligible to be considered for a GS–12 position as a GS–9 employee, but nothing in the record suggests that he was inhibited from making an application even if such an application would have been rejected. Furthermore, just as in *Robinson,* the plaintiff's claims

that Mr. Hardin treated him in a discriminatory manner do not "rise to the level of proof required for a showing of intentional discrimination." *See id.* Given that the plaintiff fails to prove that the defendant had a "demonstrably discriminatory motive" in creating the GS–12 position, this court may not "second-guess" NLRB's personnel decision. *See Fischbach,* 86 F.3d at 1183. Accordingly, the court concludes that the plaintiff cannot meet the second element of the prima-facie case of discrimination by showing he actually applied for the job.

Even assuming *arguendo* that the plaintiff could meet the second element of the prima-facie case of discrimination as a "deterred non-applicant," he does not offer evidence that a similarly qualified employee from outside the protected class was chosen for the position. While Mr. King is a white male and thus outside the protected class, he had worked at the GS–12 level at the DOI prior to coming to the NLRB. *See* Reply at 9. The plaintiff had worked at the GS–9 level. Therefore, given Mr. King's previous GS–12 level experience, the plaintiff was not similarly qualified.

Because the plaintiff has failed to provide the requisite showing with respect to his prima-facie case, the court grants the defendant's motion for summary judgment on the plaintiff's Title VII claim.

### 4. The Plaintiff's ADEA Claim

■ Without direct evidence of discrimination, an employee must also satisfy the *McDonnell Douglas* burden-shifting scheme to bring a claim under the ADEA. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima-facie case of age discrimination under the ADEA, a plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen,* 694 F.2d 853, 856–57 (D.C.Cir.1982).

A plaintiff creates such an inference by showing that: (1) he is a member of the statutorily protected age group; (2) he was qualified for the position; (3) he was discharged from and/or rejected upon reapplication to his position; and (4) the position remained open and was subsequently filled by a younger person who does not fall within the statutorily protected class. *See Hayman v. National Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994) (quoting *Cuddy,* 694 F.2d at 857).

As a man in his mid–50s, the plaintiff clearly establishes that he was a member of the protected class because he is over the age of 40. *See* Compl. at 10. Likewise, Mr. Lockamy offers adequate evidence to prove that the GS–12 position remained open and was subsequently filled by a younger person, Mr. King, who is younger than 40 and thus is not within the statutorily protected class. *See id.*

■ The plaintiff, however, fails to show that he was qualified for the GS–12 space management position. While the plaintiff claims the GS–12 position "was virtually identical" to the position he had previously held at the GS–9 level, he does not offer any concrete facts to challenge the NLRB's decision to classify the space management position at the GS–12 level. *See* Compl. at 6–7; *see also* Lockamy Dep. at 128–129. The defendant, however, contends that the differences between the GS–9 and GS–12 positions are significant in that there are 11 additional duties associated with the GS–12 level position. *See* Reply at 2. Given that the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive," and that the plaintiff fails to set forth any evidence of a discriminatory motive by the defendant, the plaintiff has not proven that he was qualified for the GS–12 position. *See Fischbach,* 86 F.3d at 1183.

Likewise, the plaintiff does not offer any evidence that he was "discharged from and/or rejected for his position upon reapplication." *See Hayman,* 23 F.3d at 537. The plaintiff was never discharged from his GS–9 position at the NLRB, but voluntarily moved to another GS–9 position in July 1995. *See* Compl. at 6. The plaintiff also never applied for the GS–12 position because he was ineligible to do so. *See id.* at 6–7. In conclusion, because the plaintiff has failed to provide the requisite showing with respect to his prima-facie case, the court grants the defendant's motion for summary judgment on the plaintiff's ADEA claim.

### 5. The Plaintiff's Retaliation Claim

■ To establish a prima-facie case of retaliation, the plaintiff must demonstrate that (1) he engaged in protected activity; (2) the employer took an adverse-personnel action against him; and (3) there is a causal link between the adverse action and the protected activity. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff clearly engaged in a protected activity on or about June 9, 1993, when he filed an informal complaint with the EEOC alleging that Mr. Hardin harassed him and discriminated against him. *See* EEO Report ¶ 12. Similarly, the plaintiff alleges that his verbal protest of discrimination against Mr. Hardin, who refused to promote the plaintiff to a GS–11 level, was a protected activity. *See* Pl.'s Opp'n at 13. But even assuming for the moment that the verbal protest was a protected activity and that the plaintiff's supervisor took an adverse-personnel action against him, the plaintiff still fails to establish a causal link between the protected activity and the alleged retaliation.

■ The court's retaliation analysis focuses on the third prong of the prima-facie case of retaliation, i.e., whether the plaintiff has shown a causal link between his protected activity in 1993 and during his time as a GS–9 employee at the NLRB, and his failure to be considered for or receive a GS–12 space management position. Mr. Lockamy must make a prima-facie showing that the adverse action would not have occurred "but for" his engaging in the protected activity. *See Gregg v. Hay–Adams Hotel,* 942 F.Supp. 1, 8 (D.D.C.1996). The more time that elapses between the protected activity and the alleged acts of retaliation, the more difficult it is to justify an inference of causal connection between the two. *See Saunders v. DiMario,* 1998 WL 525798 *4, *5 (D.D.C.1998) (the plaintiff failed to establish the causal nexus necessary for a retaliation claim where the allegedly retaliatory non-hiring occurred eight to ten years after his filing of an EEO complaint); *accord Harris v. Rector Bd. of Visitors of Univ. of Virginia,* 1996 WL 199551, *2 (4th Cir.1996) (stating that the district court properly dismissed a retaliation claim where complaints occurred 35 months before employer declined to appoint employee to a new position); *Clark v. Chrysler Corp.,* 673 F.2d 921, 930 (7th Cir.1982) (holding that absent other evidence of causation, a sufficiently great lapse of time—in this case, two years—warrants judgment for the defendants as a matter of law on retaliation claim). This court has held that even a lapse of two years between the filing of an EEO charge and the alleged retaliatory action can negate an inference of retaliatory motive. *See Jones v. Washington Metro. Area Transit Auth.,* 746 F.Supp. 178, 187 (D.D.C.1990).

In this case, the plaintiff claims that the defendant retaliated against him because of his earlier protected activity by creating a space management position at the NLRB at a GS–12 level. *See* Pl.'s Opp'n at 13. The court notes that the plaintiff offers only his own conclusory allegations and nothing else in support of his retalia-

**38**

tion claim. Thus, the court holds that without concrete, admissible evidence, the plaintiff has failed to establish a causal connection between the protected activity in 1993 and the alleged retaliation in 1996.

Because the court holds that the plaintiff has not established a prima-facie case of retaliation, it need not proceed with the *McDonnell Douglas* analysis. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's retaliation claim.

### 6. The Plaintiff's Claim of Intentional Infliction of Emotional Distress

 A claim for intentional infliction of emotional distress requires the plaintiff to show "(1) 'extreme and outrageous' conduct [by the defendant] which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C.1984) (citation omitted). This common-law claim is evaluated under District of Columbia law. *See, e.g., King v. Kidd*, 640 A.2d 656, 669 (D.C.1993). The "extreme and outrageous" requirement is not an easy one to meet. *See Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C.1994) (citations omitted). The defendant's conduct has to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Jackson v. District of Columbia*, 412 A.2d 948, 957 (D.C.1980) (citations omitted). Finally, in an employment context, the proof required to support a claim for intentional infliction of emotional distress is particularly demanding. *See Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C.1997).

 In this case, the plaintiff alleges that he was intentionally harassed, intimidated, and threatened by his supervisor at the NLRB. *See* Compl. at 12. Specifically, Mr. Lockamy claims his supervisor sabotaged and unfairly scrutinized his work, denied him the opportunity to work overtime, instructed him that he could not address white employees by their first names, told him that he could not speak to certain African–American employees, cursed at him, and told him that he could not use a typewriter that others in his department could use. *See id.*

If these allegations were true, the conduct at issue would be quite troubling, particularly the claim that a supervisor told an African–American employee (but presumably not white employees) that he could not address white employees by their first names. Nevertheless, applying the relevant case law, the court concludes that this conduct would not reach the very stringent level required to qualify as extreme and outrageous. *Cf. Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989) (evidence that the plaintiff's supervisor intentionally placed checks in her purse to make it appear that the plaintiff was a thief, or to put her in fear of criminal charges for theft of the checks constituted outrageous behavior); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991) (the plaintiff, a former executive, presented evidence of the defendant's outrageous conduct by showing that the defendant sought to humiliate him into resigning because of his age by forcing him to perform routine janitorial duties before and on behalf of his fellow employees). While such conduct may support a Title VII claim, it cannot by itself support a claim for intentional infliction of emotional distress. *See Kerrigan*, 705 A.2d at 628 (targeting an employee for sexual harassment, manufacturing false evidence, leaking information to other employees, and unjustifiably demoting the employee does not rise to the required level of outrageous conduct); *King*, 640 A.2d at 670–74 (a supervisor's repeated failure to respond to an employee's sexual-harassment claim does not rise to the required level of extreme and outrageous conduct); *Hoffman v. Hill & Knowlton Inc.*, 777 F.Supp. 1003,

1005 (D.D.C.1991) (interference with employee's ability to work, stating false, pretextual reasons for dismissing employee knowing that it would be communicated to others, and ultimately dismissing employee does not rise to the required level of extreme and outrageous conduct).

Even accepting all the plaintiff's claims as true, the court holds that the plaintiff has "fail[ed] to make a showing sufficient to establish the existence of" an essential element of his claim, namely, whether the defendant's conduct was extreme and outrageous. Moreover, even assuming for the moment that the plaintiff's allegations constituted extreme and outrageous conduct, the plaintiff has failed entirely to plead that this conduct caused him severe emotional distress. *See Howard Univ.*, 484 A.2d at 985. In sum, the court grants the defendant's motion for summary judgment on the claim for intentional infliction of emotional distress. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment on all four counts. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of October, 2001.